IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RODNEY GOLSTON, | ) | Case No. 1:24-cv-01127 |
| | ) | |
| Petitioner, | ) | JUDGE JEFFREY J. HELMICK |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | REUBEN J. SHEPERD |
| TOM WATSON, WARDEN,[1] | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

## I.      Introduction

On July 3, 2024, Petitioner Rodney Golston (hereinafter "Golston" or "Petitioner"), a prisoner in state custody, filed a *pro se* petition seeking a writ of habeas corpus under 28 U.S.C. § 2254. (ECF Doc. 1). Golston filed a Motion for Leave to File an Amended Petition on November 4, 2024. (ECF Doc. 8). The same day, Respondent filed their Return of Writ. (ECF Doc. 7). I granted Golston's Motion to Amend on November 19, 2024. (Non-document entry of Nov. 19, 2024). Golston filed a Traverse on November 25, 2024. (ECF Doc. 11). Respondent filed a Return of Writ to Petitioner's Amended Petition on December 19, 2024. (ECF Doc. 12). Golston then filed a Traverse to Return of Writ on January 7, 2025. (ECF Doc. 13). Respondent has not filed a reply. The matter is therefore ripe.

---

[1] Petitioner identified Respondent as Tom Watson, Warden. Petitioner is incarcerated at the Richland Correctional Institution, where Angela Stuff is the Warden, and, as such, is the proper party Respondent.

The District Court has jurisdiction over the petition under § 2254(a). On September 5, 2024, pursuant to Local Civil Rule 72.2, this matter was referred to a Magistrate Judge to prepare a Report and Recommendation. (Non-document entry of Sept. 5, 2024).

Because the grounds in Golston's petition are non-cognizable or otherwise have been procedurally defaulted and excuse is unavailable to him, I recommend the District Court dismiss his petition.

## II.    Factual Background

The Ohio Court of Appeals, Eighth Appellate District, Cuyahoga County, set forth the facts on direct appeal. These factual findings are presumed correct unless Golston rebuts this presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). The Eighth District presented the facts as follows:

> {¶ 2} Golston was indicted for endangering children, a second-degree felony in violation of R.C. 2919.22(B)(1), and unlawful sexual conduct with a minor, a third-degree felony in violation of R.C. 2907.04(A). The victim identified for each count was N.B. Following the presentation of all the evidence at trial, the state moved to amend the indictment to reflect the evidence regarding the dates of the offenses as follows: endangering children, October 10, 2013, to January 22, 2014; and, unlawful sexual conduct with a minor, June 1, 2012, to March 1, 2014. Golston did not object.

> {¶ 3} Golston filed a motion in limine on June 29, 2022, requesting a hearing and giving "notice [that] he will seek to introduce evidence that falls within the permissible areas of inquiry as set forth in R.C. 2907.02(D)" at trial. Specifically, Golston sought to question N.B. regarding her sexual partners prior to having an abortion. Prior to the commencement of trial on August 1, 2022, the court heard argument from counsel and denied Golston's motion.

> {¶ 4} Further, during pretrial proceedings the day trial began, Golston's trial counsel informed the court that he intended to inquire of N.B. regarding "what appear to be digital messages that we believe in good faith were authored and posted by the alleged victim" (the "Messages"). The state of Ohio orally moved to exclude the Messages, marked as exhibits A, B, C, and D,2 and to limit Golston's ability to question N.B. regarding the Messages. A review of the Messages indicates that some of the content appears to be posted under the username "tigggg.___", the account has a photo attached to it, and one of the Messages states:

> Lmaoooo, That's Why You Cant See Your Son Old a** N***a That's Why I Lie About the rape she to get my Custody back that's why I'm winning my case now b***h The prosecutor told me you went to Court you about to get locked up b***h[] a** n***a that's what you get for trying to take my son from me now who's over there [emoji] looking Miserable and lonely knowing your son not at your house lol you won't be putting that poison in his head about me[.]

{¶ 5} The state argued Golston "shouldn't be able to question [N.B.] about these things when there's absolutely no authentication * * * regarding who authored these messages or where they came from." During trial, out of the presence of the jury, the court allowed Golston to question N.B. about the authenticity of the Messages. N.B. claimed that she did not recognize them and that she had not authored them. The court ruled from the bench as follows: "I will grant the state's motion and you will not be permitted to ask her any questions about those exhibits * * *."

{¶ 6} In response to the court's ruling, Golston argued:

> Your Honor, if I may, and it's probably premature. I expect the evidence to show later on if my client were to take the stand that he will testify as to those messages, and if he knows who those persons are behind those addresses, and she can be recalled as a rebuttal witness as the State desires.

> I anticipate they will be authenticated. There's no other way to do it. He's the recipient of it. The jury could believe him or not believe him. Testing her credibility is the heart of the case.

> The court maintained its ruling.

{¶ 7} At the conclusion of the trial, the jury found Golston guilty of both counts. The trial court sentenced Golston to seven years in prison for endangering children and 36 months in prison for unlawful sexual conduct with a minor. The court ran the sentences consecutive for an aggregate prison term of ten years.

*State v. Golston,* No. 112394, 2024 WL 631635 *1-5 (Ohio Ct. App. Feb. 15, 2024).

### III.    State Court History

### A.    Trial Proceedings

Golston was indicted on two counts by the September 2021 term of the Cuyahoga County Court of Common Pleas grand jury. (ECF Doc. 9-1, pp. 29-30). The indictment included one count of Endangering Children under O.R.C. § 2919.22(B)(1) and one count of Unlawful Sexual Conduct With A Minor under O.R.C. § 2907.04(A). (*Id.* at pp. 29-30). Golston pled not guilty to the charges. (*Id.* at p. 31).

On June 29, 2022, Golston filed a motion *in limine* seeking to introduce evidence, and to permit cross-examination pertaining to the identity of the biological father of the alleged victim's aborted pregnancy in 2014 and the alleged victim's medical procedure conducted on January 22, 2014. (*Id.* at pp. 32-33). The State filed a Response to Motion *in limine* under Ohio's Rape Shield Statute on July 7, 2022. (*Id.* at pp. 34-39). The trial court held a hearing on the Motion *in limine* on August 1, 2022, as the trial was commencing, and denied the motion. (*Id.* at pp. 223-30). At the hearing, the State made an oral Motion *in limine* asking the court to exclude evidence of social media messages purportedly sent by the alleged victim to Golston. (*Id.* at pp. 230-36). The Court conducted a voir dire of the alleged victim before her testifying and excluded the social media messages based on a lack of authentication. (*Id.* at pp. 442-54)

Before the trial, the State also moved to Amend the Indictment, amending the date of the offense for Count 2 from October 10, 2013, to between October 10, 2013 to March 1, 2014. (*Id.* at p. 40). The trial court granted the Motion without objection from the defense. (*Id.* at pp. 221-22).

The case proceeded to trial, and on August 3, 2022, the jury found Golston guilty of both counts in the indictment. (*Id.* at p. 43). The jury further found that the defendant did cause

4

substantial risk of serious physical harm, that the victim was thirteen years or older but less than sixteen years old at the time of the offense, and that the defendant was ten or more years older than the victim at the time of the offense. (*Id.*). On September 1, 2022, the trial court imposed a 7-year prison sentence on count one and a 36-month prison sentence on Count Two. The sentences were ordered to run consecutively for a total prison sentence of ten years. Golston was also advised of his duties to register as a tier II sex offender. (*Id.* at p. 45).

### B.    Direct Appeal

On October 4, 2022, Golston filed his Notice of Appeal with Ohio's Eighth District Court of Appeals. (ECF Doc. 9-1, pp. 48-58). On October 12, 2022, the Eighth District Court of Appeals dismissed his appeal for failure to file a timely notice of appeal. (*Id.* at p. 59). Golston filed a Motion for Leave to File Delayed Appeal on December 28, 2022 (*Id.* at pp. 60-80). That Motion was denied the next day. (*Id.* at p. 81). Golston again filed A Notice of Appeal with the Eighth District on February 1, 2023 (*Id.* at pp. 82-91) and Motion for Leave to File Delayed Appeal on February 10, 2023. (*Id.* at pp. 92-96). The Motion for Leave to File Delayed Appeal was granted on March 1, 2023. (*Id.* at p. 97).

Golston filed his appellant's brief on June 2, 2023, raising the following three assignments of error[2]:

> **Assignment of Error No. 1:** Whether Defendant-Appellant was prejudiced from preparing a firm defense at trial by the trial court's failure to abide by the mandatory time frame of Ohio Revised Code § 2907.02(E), where Defendant timely requested a hearing 33 days prior to trial.
>
> **Assignment of Error No. 2:** Whether ruling on Defendant-Appellant's motion under Ohio Revised Code § 2907.02(D) on the day of trial, resulting in a denial,

---

[2] Although Golston's brief included delineation of three assignments of error, Golston did not separately argue Assignment of Error 2, and that argument was therefore not considered. (ECF Doc. 9-1, at p. 154).

afforded adequate time to reformulate a strategy for defense or to consider an Alford plea.

**Assignment of Error No. 3:** Whether the granting of the State's oral motion in limine to exclude social media exhibits added to the cascade of rulings which denied Defendant-Appellant an opportunity to adequately present a defense at trial.

(*Id.* at p. 103). The State filed its brief in response on October 18, 2023. (*Id.* at pp. 140-50).

Golston filed a reply brief. (*Id.* at pp. 123-39). On February 15, 2024, the state appellate court

affirmed Golston's conviction and sentence. (*Id.* at pp. 151-60; *see also State v. Golston,* No.

112394, 2024 WL 631635, *1-5 (Ohio Ct. App. Feb. 15, 2024)).

C.      **Appeal to the Ohio Supreme Court**

On March 25, 2024, Golston timely filed a *pro se* Notice of Appeal of the appellate

court's decision to the Ohio Supreme Court. (ECF Doc. 9-1, p. 161-63). In his Memoradum in

Support of Jurisdiction, he raised the following three propositions of law:

1.      On Appeal, this Honorable Court of Appeals has before it an issue of Defendant-Appellant's timely request for a hearing under Ohio Revised Code 2907.02(E), but the trial court's contrary to the express time frame imposed by statute, was held at the commencement of trial rather than the expressed "not less than three days before trial". The standard of review regarding the misapplication of law/ statute is de novo. **Johnson v. Abdullah** (2019), 166 Ohio St.3d 427, 219-Ohio-4861 at paragraph 38.

2.      Defendant Golston was prejudiced from preparing a firm defense at trial by the court's failure to abide by the mandatory time frame of the Ohio Revised Code 2907.02(E), where Defendant timely requested a hearing 33 days prior to trial.

3.      The trial Court's ruling, in limine, to exclude Defendant Exhibits A, B, C, D was prejudicial and denied him a fair trial.

(*Id.* at pp. 164-189). On June 11, 2024, the Supreme Court of Ohio declined to accept

jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4).

Golston did not appeal to the United States Supreme Court.

6

### IV.     **Federal Habeas Corpus Petition**

Golston brings five grounds for relief in his Amended Habeas Petition, timely filed in this

Court on November 4, 2024. (ECF Doc. 8-1).

> **GROUND ONE:** Defendant was prejudiced from preparing a firm defense at trial.
>
> <u>Supporting Facts:</u> Defendant-Appellant was prejudiced from preparing a firm defense at trial by the trial court's failure to abide by the mandatory time-frame of Ohio Revised Code § 2907.02(E), where Defendant timely requested a hearing 33 days before trial. (Citing)(for) pursuant to R.C. 2907.02(E) and 2907.02(D), Rape Shield Statute.
>
> **GROUND TWO:** The trial court's ruling in (limine) [sic] to exclude Defendant's exhibits.
>
> <u>Supporting Facts:</u> The Petitioner, Rodney Golston, did provide both investigating police and the State with social-media (messages of evidence) he was sent by this alleged victim. While there was a (voir-dire) of the victim in which she denied transmitting the messages; (out of the presence of the jury); this trial court deprived him the right to present his evidence of Exhibits (A), (B), (C) and (D). This prejudiced my case; Judge was bias.
>
> **GROUND THREE:** Prayer for Relief.
>
> <u>Supporting Facts:</u> This Petitioner, sought a reversal of these convictions by the Supreme Court of Appeals, pursuant to the fact that his Common Pleas Court Judge demonstrated (Bias) and (Prejudice) with malice toward the Petitioner from the start of trial and before trial; Petitioner's evidence should not have been excluded and/or dismissed. Investigation of his evidence was denied wrongfully.
>
> **GROUND FOUR:** Due process of law was deprived and impeded and/or circumvented.
>
> <u>Supporting Facts:</u> Due Process; Procedural Due Process and due proof were all denied and deprived, against this Petitioner, Rodney Golston, before, during and throughout his pre-trials, trial and sentencing. "Deprivation of right under color of

law". (Citing) Title 18, U.S.C. Section 242, did occur, by way and through a (bias) Judge, demonstrating anticipatory judgment of guilt.

**GROUND FIVE:** Ineffective assistance of counsel.

<u>Supporting Facts:</u> The ineffective assistance of counsel involved the following:

1) Criminal defense attorney: Gary Levine
2) Eighth District Court of Appeals Attorneys: Charles Ruiz-Bueno CO. L.P.A. (and) J. Charles Ruiz-Bueno, Esq.

Here, within, this Defendant-Appellant-Petitioner, Rodney Golston, demonstrated explicit pre-existing mental impairment; Comprehension-Deficit Disorder; lacking I.Q > Intelligence Quotient; A.D.D.; Attention Deficit Disorder; these challenges and my other pre-existing conditions, were ignored, and not presented to this Cuyahoga County Common Pleas Court, within Golston's pre-trial hearings, trial and sentencing, nor were they presented by his Appeal Attorney.

(*Id.* at pp. 5-11).

## V.     Federal Habeas Corpus Standard of Review

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, PL 104-132, April 24, 1996, 110 Stat 1214, 110 Stat. 1214 ("AEDPA"), applies to Golston's petition for writ of habeas corpus. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). "As amended by AEDPA, 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). This is so because "[s]tate courts are adequate forums for the vindication of federal rights" and AEDPA thus acts as a "formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). As a result, AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (internal citation and quotation omitted).

Under 28 U.S.C. § 2254, federal courts may "entertain only those applications alleging that a person is in state custody 'in violation of the Constitution or laws or treaties of the United States'" and in most instances, federal courts may not grant habeas relief "unless . . . the applicant has exhausted state remedies." *Cullen*, 563 U.S. at 181, quoting 28 U.S.C. §§ 2254(a), (b), (c). Further, if an application for writ of habeas corpus involves a claim that was "adjudicated on the merits in State court proceedings," the application shall not be granted . . . unless the adjudication of the claim —

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2); *Cullen*, 563 U.S. at 181; *Harrington v. Richter*, 562 U.S. 86, 100 (2011); *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007). The burden of proof rests with the petitioner. *Cullen*, 563 U.S. at 181.

First, clearly established federal law for purposes of AEDPA review includes "the holdings, as opposed to dicta, of [U.S. Supreme Court] decisions." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is contrary to U.S. Supreme Court precedent if the state court arrives at a conclusion opposite that reached by the Court on a question of law or if the state court decides a case differently than the Court despite both cases having materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *White v. Mitchell*, 431 F.3d 517, 523 (6th Cir. 2005), *cert. denied*, 549 U.S. 1047 (2006). Even so, a state court does not act contrary to clearly established federal law where U.S. Supreme Court precedent is ambiguous or otherwise unavailable. *See, e.g.*, *Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

A state court decision is an unreasonable application of Supreme Court precedent where the state court's adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Williams*, 529 U.S. at 409-11; see also *Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000), *cert. denied*, 531 U.S. 1089 (2001). Under § 2254(d)(2), a state court's factual determination will stand unless it is objectively unreasonable in light of the evidence presented in state court. *Harrington v. Richter*, 562 U.S. 86, 100 (2011). "[A] federal habeas court may not grant relief simply because it concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 365.

Next, "a determination of a factual issue made by a State court shall be presumed to be correct. [Petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2554(e)(1). And, as the U.S. Supreme Court has repeated, "a state court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion." *Burt*, 571 U.S. at 18. Federal courts must also defer to a state court's judgment on issues of state substantive and procedural law. *Murray v. Carrier*, 477 U.S. 478, 491 (1986); *Engle v. Isaac*, 456 U.S. 107, 128-29 (1982).

In all, federal habeas corpus relief is a "guard against extreme malfunctions in the state criminal justice systems," and is different in kind from the relief available in direct appeal. *Harrington*, 562 U.S. at 102-03; *see also Brown v. Davenport*, 596 U.S. 118, 133 (2022) (internal quotation omitted). Thus, to obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

10

When a properly presented federal constitutional claim was not adjudicated on the merits in the state courts, the reviewing federal court must apply the pre-AEDPA standard, reviewing de novo questions of law and mixed questions of law and fact. *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007) ("When the state court has not assessed the merits of a claim properly raised in a habeas petition, the deference due under AEDPA does not apply.").

## VI. Procedural Barriers to Federal Habeas Corpus Review

Before coming to federal court, a state habeas petitioner must overcome certain procedural barriers, including exhaustion of state remedies and procedural default. *See Daniels v. United States*, 532 U.S. 374, 381 (2001). A federal court sitting in habeas review may review claims that were evaluated on the merits by the state court. But claims that were not evaluated by a state court, either because they were never fully presented to the state court (*i.e.*, state court remedies were unexhausted) or because they were not properly presented to the state court (*i.e.*, they are procedurally defaulted) are unavailable for federal habeas corpus review. *Bonnell v. Mitchel*, 301 F. Supp. 2d 698, 722 (N.D. Ohio 2004), *aff'd sub nom. Bonnell v. Mitchell*, 212 F. App'x 517 (6th Cir. 2007).

### A. Exhaustion

A petitioner must first give the state courts a "*fair*" opportunity to act on his claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999) (emphasis in original). For a claim to have been fairly presented, the factual and legal basis of the claim asserted by the petitioner must have been raised at each and every stage of state review. *Wagner v. Smith*, 581 F.3d 410, 418 (6th Cir. 2009); *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). It is not enough for the claim raised in state court to be "somewhat similar" to the one raised in the habeas petition or implicate

11

the same facts; the state court must have been called on to apply the legal principles of the claim now presented to the federal courts. *Jalowiec v. Bradshaw*, 657 F.3d 293, 304 (6th Cir. 2011).

The petitioner also must have presented their "claim to the state courts as a federal constitutional issue – not merely as an issue arising under state law." *Williams*, 460 F.3d at 807 (quotation marks omitted). In this Circuit, this can be done in one of four ways:

    (1) reliance upon federal cases employing constitutional analysis;

    (2) reliance upon state cases employing federal constitutional analysis;

    (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or

    (4) alleging facts well within the mainstream of constitutional law.

*McMeans*, 228 F.3d at 681 (paragraph breaks added).

Failure to exhaust occurs where state court remedies are still "available at the time of the federal petition." *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). This failure to exhaust can also lead to a petitioner procedurally defaulting his claims. If the petitioner has not fully utilized his state remedies and has no legal mechanism to do so now, the claim he failed to present is procedurally defaulted, and this Court cannot act on the claim either. *See Gray v. Netherland*, 518 U.S. 152, 161-62 (1996); *Williams v. Anderson*, 460 F.3d 789, 809 (6th Cir. 2006).

### B.    Procedural Default

The procedural default doctrine limits federal review if the petitioner has failed to follow the state's procedural requirements for presenting his or her claim in state court. *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991). This doctrine flows from the insight that courts must have the authority to insist that "defendants present their arguments on time and according to established procedures." *Benton v. Brewer*, 942 F.3d 305, 307 (6th Cir. 2019). Thus, a federal

habeas court will not consider a habeas petition if "the last state-court judgment denying relief on the claim rests on a procedural state-law ground that is 'independent of the federal question and is adequate to support the judgement.'" *Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013) (quotation marks omitted).

This Circuit consults a four-part test to determine whether a petitioner has procedurally defaulted a claim. A petitioner procedurally defaults a claim if: (1) the petitioner fails to comply with a state procedural rule; (2) the state courts enforced the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner cannot show cause and prejudice excusing the default. *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

Because the procedural-default bar to federal habeas review is harsh, courts have created safety-valves to permit review in limited circumstances. A petitioner can obtain review of procedurally defaulted claims if he or she shows: (1) "cause," *i.e.*, that some external factor kept him from complying with the state rule or fairly presenting his claim; and (2) "prejudice," *i.e.*, that, assuming the petitioner's constitutional claim has merit, there is a reasonable probability that a different verdict would have resulted if the alleged constitutional violation hadn't occurred. *Coleman*, 501 U.S. at 750; *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012). A petitioner can also obtain review of a procedurally defaulted claim if the procedurally defaulted claim is based on new evidence that the petitioner was factually innocent of the crime of conviction. *See Coleman*, 501 U.S. at 750 ("fundamental miscarriage of justice" exception to procedural default); *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (A "fundamental miscarriage of justice" can occur only when the procedurally defaulted claim would establish that the petitioner was "actually innocent."). But "[A]ctual[] innocen[ce]" means "factual

innocence, not mere legal insufficiency."; *Bousley v. United States*, 523 U.S. 614, 623 (1998). To overcome procedural default, an actual innocence claim must be supported by "new reliable evidence . . . that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

## VII.   Discussion

Golston raises five grounds for relief in his petition before this Court. (ECF Doc. 8-1, pp. 5-11). His first ground for relief relates to timing of the state trial court's hearing on his motion *in limine* as required under Ohio Revised Code § 2907.02(E). (*See* ECF Doc. 9-1, at pp. 32-39, 223-30). His second ground for relief relates to the state trial court granting the state's oral motion *in limine* to exclude Defendant's exhibits purported to be social media messages sent by the alleged victim. (*Id.* at pp. 230-36, 442-54). His third ground for relief relates to bias and prejudice of the state court trial judge. (*Id.* at pp. 203-719 (trial transcript)). Petitioner's fourth ground for relief relates to a due process violation brought about by the bias of the state court trial judge. (*Id.*) His fifth ground for relief claims ineffective assistance of counsel. (*Id.*) As the first, second and third grounds are similar, I address them together. I will consider his fourth and fifth grounds separately.

### A.   Golston's Grounds for Relief One, Two and Three are non-cognizable.

In his first Ground for Relief, Golston argues that the trial court's failure to abide by the statutorily defined requirement to hold an evidentiary hearing relative to his Motion *in limine* deprived him of the ability to prepare a "firm defense." (ECF Doc. 8-1, p. 5) As the hearing, and the trial court's ruling, were given immediately prior to commencing the trial, Golston contends he could not consider alternate trial strategies. (*Id.*). Further, in his second and third grounds for Relief, Golston argues that the trial court's decision to exclude evidence consisting of text and social media messages purportedly sent by the alleged victim, deprived him of the opportunity to

14

present his evidence at trial. (*Id.,* at p. 7). Golston further claims that the trial court judge demonstrated "bias" and "prejudice" with "malice toward" Golston when he excluded the evidence Golston sought to introduce. (*Id.*, at p. 8). Respondent argues that Golston has failed to demonstrate that any alleged error had a substantial and injurious effect, or that such an alleged error was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States. Golston is therefore not entitled to habeas relief on this Ground. (ECF Doc. 9, pp. 13-14).

A petition for a writ of habeas corpus filed by a petitioner imprisoned under the judgment of a state court is governed by 28 U.S.C. § 2254(a), which permits the state prisoner to challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." (*Id.*). Federal habeas corpus relief "does not lie for errors of state law" *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990), and the federal court is bound by the state court's interpretation of state law. *See, e.g.*, *Wainwright v. Goode*, 464 U.S. 78, 84 (1983). A federal habeas court does not function as another state appellate court reviewing state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago,* 809 F.2d 328 (6th Cir. 1987). "[F]ederal courts must defer to a state courts interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Allen*, 845 F.2d at 614). A claim that alleges only errors of state law are cognizable only to the extent that the "error amounts to a fundamental miscarriage of justice or a violation of the right to due process." *Cristini v. McKee*, 526 F.3d 888, 897 (6th Cir. 2008).

"In general, alleged errors in evidentiary rulings by state courts are not cognizable in federal habeas review," but habeas relief may be granted if "the state's evidentiary ruling is so fundamentally unfair that it rises to the level of a due process violation." *Wood v. Morrison*,

2021 WL 1327841, at *3 (6th Cir. Jan. 11, 2021); *see also Moreland v. Bradshaw,* 699 F.3d 908, 923 (6th Cir. 2012). In his Grounds for Relief One, Two and Three, Golston is seeking relief based on the state court's interpretations of the rule of procedure governing hearings for Motions *in limine* in state court, and the state's Rules of Evidence. He has failed, however, to show that any error by the state trial court in applying Ohio evidentiary law was egregious enough to amount to a denial of a constitutional right. (*Id.*). He has not identified how these interpretations rise to the level of fundamental miscarriages of justice or demonstrated any violations of a due process right. Rather, he has asserted that the substance and timing of the rulings pertaining to evidence questions impaired his ability to consider all potential trial strategies and present his case to the jury. Possible restrictions to developing trial tactics based on such rulings do not implicate the Constitution or laws or treaties of the United States. These challenges therefore do not entitle him to habeas relief, and I recommend the District Court deny these grounds as not cognizable.

> **B.  This court may not reach the merits of Golston's Grounds for Relief Four and Five because they were procedurally defaulted in state court.**

In his fourth Ground for Relief, Golston argues he was denied due process of law because the trial court's evidentiary rulings demonstrated "anticipatory judgment of guilt". (ECF Doc. 8-1, at p. 10). He argues in his fifth Ground for Relief that he received ineffective assistance of counsel at both the trial and appellate levels. (*Id.* at p. 11). He specifically contends that his counsel failed to present evidence of his "demonstrated, explicit, pre-existing mental health impairment" to the trial court during pre-trial, trial or sentencing hearings. (*Id.*) Further, his counsel did not raise these impairments in the appellate court. (*Id.*).

A state prisoner's federal claim is defaulted if he fails to comply with a state procedural rule. *Johnson v. Bradshaw,* 493 Fed. App'x. 666, 669 (6th Cir. 2012). The federal court will not

review claims that were not entertained by the state court either because of the petitioner's failure to raise those claims in the state courts while state remedies were available or when the petitioner's failure to comply with a state procedural rule prevented the state courts from reaching the merits of the claims. *Smith v. State of Ohio Dept. of Rehab. and Corrections,* 463 F.3d 426, 430-31 (6th Cir. 2006); *Lundgren,* 440 F.3d at 763. For noncompliance with a state procedure to bar habeas review, the state procedure must satisfy the standards set forth in *Maupin.* Under *Maupin*, a petitioner procedurally defaults a claim if: (1) the petitioner fails to comply with a state procedural rule; (2) the state courts actually enforced the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner cannot show cause and prejudice excusing the default. *Maupin*, 785 F.2d at 138. If the first three prongs of the *Maupin* analysis are satisfied, the petitioner can overcome the procedural default by either "demonstrat[ing] cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrat[ing] that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

"The determination of whether a state procedure – including a procedure governing the timing of appeals – is adequate requires an application of the *Maupin* factors to the specific state procedure invoked and to the operation of that procedure in practice." *Smith*, 463 F.3d at 431.

In applying the *Maupin* analysis to this case, the first step is satisfied by Golston's failure to timely file his direct appeal in Ohio's Eighth District Court of Appeals. (ECF Doc. 9 at 59). Further, his first Motion for Leave to File Delayed Appeal was denied as it was filed without a new notice of appeal attached. (*Id.* at 81). Golston did, however, file a second Motion for Leave to File Delayed Appeal along with a Notice of Appeal, and that motion was granted on March 1,

2023. (*Id.* at 97). As *Maupin* states as the second prong of its analysis, "the court must decide whether the state courts *actually enforced* the state procedural sanction." *Maupin*, 785 F.2d at 138 (emphasis added). Because Golston remedied the deficiencies giving rise to his failure to comply with the state procedural rule, and he was ultimately able to file his direct appeal and have it considered on its merits at the state appellate court level, enforcement of this procedural rule only delayed, rather than denied, review of Golston's issue. This case therefore does not meet the enforcement requirement of the second step of the *Maupin* analysis. Accordingly, Golston survives *Maupin* review, and the analysis of whether his fourth and fifth Grounds for relief were exhausted must continue.

> **1.  Golston's Ground for Relief Five was not fairly presented to the state courts and is now procedurally defaulted.**

In his fifth ground for relief, Golston argues he was provided ineffective assistance of counsel in the trial court because his attorney failed to investigate and present evidence of his "demonstrated explicit pre-existing mental impairment". (ECF Doc. 8-1, p. 11). Golston claims his mental impairment rendered him incapable of understanding the case being presented against him and he was denied court-ordered competency testing. (*Id.* at p. 15). Golston further argues that his appellate counsel was also ineffective as he too failed to raise the issue of Petitioner's mental impairment. (*Id.*). Respondent contends that Golston's ineffective assistance of counsel ground was not raised at any level in the state courts and is therefore procedurally defaulted. (ECF Doc. 12, p. 26). Respondent further argues that Golston has failed to demonstrate cause or prejudice, nor has he presented any evidence of actual innocence that would allow this court to hear his procedurally defaulted claim. (*Id.* at pp. 26-27).

Exhaustion of state court remedies is a prerequisite for federal habeas relief. *See* 28 U.S.C. § 2254(b)(1)(A). Thus, for a state prisoner's claim to be available for federal habeas

corpus review, the petitioner must first give state courts a "*fair* opportunity" to act on those claims. *O'Sullivan*, 526 U.S. at 844, citing 28 U.S.C. § 2254(c) (emphasis in original). "State courts, like federal courts, are obliged to enforce federal law[,]" therefore, "state courts should have the first opportunity to review [a petitioner's] claim and provide any necessary relief." *Id.*; *see also Shinn v. Ramirez*, 596 U.S. 366, 378 (2022) ("Exhaustion affords States an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights . . . .") (internal quotations and marks omitted). To satisfy the fair presentation requirement, a petitioner must do more than present the "'substance'" of their claim to the state court; the petitioner "is required to present the state courts with the same claim, or a claim 'substantially equivalent' to the claim" now presented in federal court. *Jalowiec*, 657 F.3d at 304, quoting *Picard v. Connor*, 404 U.S. 270, 275-78 (1971). The petitioner must also present the state court with the federal constitutional basis for their claims, which may be done by (1) relying on federal cases employing constitutional analysis; (2) relying on state cases employing federal constitutional analysis; (3) presenting the claim in sufficiently particular terms to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law. *McMeans*, 228 F.3d at 681; *see also Williams*, 460 F.3d at 807.

Failure to properly exhaust in state court can lead to procedural default of a federal habeas corpus petition. *Woodford v. Ngo*, 548 U.S. 81, 92 (2006). In federal habeas, if a state court remedy is no longer available, whatever the reason, that remedy is exhausted; but technical exhaustion via unavailability of a state court remedy does not automatically entitle the petitioner to litigate the merits of their claims in federal court. *Id.*

Having reviewed the state court record, Golston nowhere claimed that his trial or appellate counsel provided ineffective assistance. Nor is there any mention of the type of "mental

impairment" that he raises as the basis of his ineffective assistance of counsel claims before this court. The exhaustion requirement demands that Golston first utilize any state court process available prior to presenting that claim in federal habeas proceedings. *Brandon v. Stone,* 226 Fed. Appx. 458, 460 (6th Cir. 2007). These unexhausted claims become procedurally defaulted where remedy is no longer available in state court. Having failed to exhaust his claims, and now having no remedy available to him, Ground for Relief Five is procedurally defaulted.

### 2. Golston's Ground for Relief Four was not fairly presented to the state courts and is now procedurally defaulted.

In his fourth ground for relief, Golston contends that he was deprived of due process because the trial court "demonstrate[ed] anticipatory judgment of guilt." (ECF Doc. 8-1, p. 10). Again, when comparing this ground to issues raised with the state Appellate and Supreme courts, no claim that is the same or substantially equivalent was presented at those levels. Golston therefore has not met the *O'Sullivan* requirement of granting state courts the first opportunity to review his claim and provide any necessary relief. Accordingly, this claim is also procedurally defaulted.

### 3. Neither cause and prejudice nor actual innocence excuse procedural default of his Grounds for Relief.

Because the procedural default bar is harsh, as noted above, the petitioner may still obtain review of procedurally defaulted claims by showing: (1) "cause," *i.e.*, that some external factor kept him from complying with the state rule or fairly presenting his claim; and (2) "prejudice," *i.e.*, that, assuming the petitioner's constitutional claim has merit, there is a reasonable probability that a different verdict would have resulted if the alleged constitutional violation hadn't occurred. *Coleman*, 501 U.S. at 750; *Wogenstahl*, 668 F.3d at 337. A petitioner may also obtain review of a procedurally defaulted claim if his procedurally defaulted claim is based on

20

new evidence that he was factually innocent of the crime of conviction. *See Coleman*, 501 U.S. at 750 (describing the "fundamental miscarriage of justice" exception to procedural default); *see also Lundgren*, 440 F.3d at 764 (A "fundamental miscarriage of justice" can occur only when the procedurally defaulted claim would establish that the petitioner was "actually innocent."). But even so, it is a high standard to demonstrate actual innocence. *See Bousley*, 523 U.S. at 623. "[A]ctual[] innocen[ce]" means "factual innocence, not mere legal insufficiency." *Id.* Moreover, an actual innocence claim must be supported by "new reliable evidence . . . that was not presented at trial." *Schlup*, 513 U.S. at 324.

Golston has not overcome the procedural default of his claims. He argues only the merits of his grounds for relief in his Amended Traverse and does not address the procedural default of his claims in his briefings. (*See* ECF Docs. 8-1, 13). Here, my review of Golston's claims brought in state court reveals that he did not fairly present those claims in a manner sufficient to meet the fair presentation requirement. He has not presented cause to **excuse** his failure to fairly present his claim in state court. *Coleman*, 501 U.S. at 750. If a petitioner fails to demonstrate cause for the procedural default, then the court need not reach prejudice. *Smith v. Murray*, 477 U.S. 527, 533 (1986). I therefore decline to address whether prejudice would excuse procedural default.

Nor has Golston demonstrated actual innocence. He has not asserted his factual innocence, rather, he asserts only that he was unable to properly prepare and present his defense because of the timing of his evidentiary hearing, the trial court's interpretation of the rules of evidence, and the perceived ineffective assistance he received from trial and appellate counsel.

(*See* ECF Docs. 8-1, 13). This is not enough to overcome the procedural bar to federal review of the merits of his claims.

I therefore recommend the District Court dismiss these grounds in Golston's petition as procedurally defaulted.

## VIII.   Certificate of Appealability

Under 28 U.S.C. § 2253(c)(1)(A), this Court will grant a certificate of appealability ("COA") for an issue raised in a § 2254 habeas petition only if the petitioner has made a substantial showing of the denial of a federal constitutional right. *Cunningham v. Shoop*, 817 F. App'x 223, 224 (6th Cir. 2020). A petitioner satisfies this standard by demonstrating that reasonable jurists "could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (internal quotation marks omitted); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

When a claim is denied on procedural grounds, the petitioner must show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further. In such a circumstance, no appeal would be warranted." *Id.* at 486.

Here, it is well-established that a petitioner must provide a full and fair presentation of his claims in the state court on the same grounds as those presented in federal court. *O'Sullivan*, 526

U.S. at 845. As discussed above, Golston has procedurally defaulted grounds four and five raised in this petition and has not shown that he is entitled to excuse that default. Moreover, his first, second and third grounds for relief are not cognizable in this Court, because there is no clearly established Supreme Court precedent establishing a due process violation for permitting propensity evidence. *Bugh*, 329 F.3d at 512. Thus, if the District Court accepts my recommendations, Golston will not be able to show that my conclusions in this Report and Recommendation are debatable. I therefore recommend that no certificate of appealability issue in this case.

## IX.    Recommendation

For these reasons, I recommend dismissing Golston's federal habeas corpus petition with Grounds Four and Five as procedurally defaulted, and denying as to Grounds One, Two and Three as not cognizable. I further recommend he be denied a certificate of appealability.

Dated: January 29, 2025

Reuben J. Sheperd
United States Magistrate Judge

_____

**Objections, Review, and Appeal**

Within 14 days after being served with a copy of this report and recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the magistrate judge. Rule 72(b)(2), Federal Rules of Civil Procedure; *see also* 28 U.S.C.§ 636(b)(1); Local Rule 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

* * *

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the

United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entire report and recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).